UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-00243-FL

**Burt V. Greene**,

        Plaintiff,

v.

**Carolyn W. Colvin,** Acting
Commissioner of Social Security,

        Defendant.

**Memorandum & Recommendation**

Plaintiff Burt V. Greene instituted this action on June 8, 2015, to challenge the denial of his application for social security income. Greene claims that Administrative Law Judge Yvonne K. Stam erred in her determination by failing to properly address a psychological consultative examination; failing to address Greene's ability to push, pull, and finger; and by failing to provide an appropriate mental and physical residual functional capacity ("RFC") to reflect Greene's capabilities. Both Greene and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 34, 37.

After reviewing the parties' arguments, the court has determined that ALJ Stam erred in her decision by failing to specifically explain her reasons for assigning differing weights to medical opinion evidence. Therefore, the undersigned magistrate judge recommends[1] that Greene's Motion for Judgment on the Pleadings be granted, that Colvin's Motion for Judgment

---

[1] The court has referred this matter to the undersigned magistrate judge for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

on the Pleadings be denied, and that the Commissioner's final decision be remanded for further consideration.

I.   **Background**

On August 30, 2011, Greene filed an application for disability insurance benefits on the basis of a disability that allegedly began on July 30, 2011. He also protectively filed an application for supplemental security income on August 30, 2011 on the basis of a disability that allegedly began on July 30, 2011. After his claims were denied at both the initial stage and upon reconsideration, Greene appeared before ALJ Stam for a hearing to determine whether he was entitled to benefits. After the hearing, ALJ Stam issued a partially favorable decision. D.E. 39 at 31. ALJ Stam determined that Greene was disabled beginning on October 15, 2013, the date of his 55th birthday, but that he was not disabled prior to that date. *Id.*

ALJ Stam found that Greene had the following severe impairments: left shoulder dysfunction, hypertension, fracture of lower limb, affective disorder, substance abuse (alcohol) and anxiety disorder. *Id.* at 23. However, ALJ Stam determined that Greene's impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 23–24. Based on her examination of the record, ALJ Stam concluded that Greene had the RFC to perform light work but was limited to simple, routine and repetitive tasks in a relatively stable work setting and to frequent handling with the left non-dominant extremity. *Id.* at 24. She then found that Greene was unable to perform any past relevant work but that, considering his age prior to the age category change, education, work experience and RFC, there were other jobs that existed in the national economy that he was capable of performing. *Id.* at 30–31. These included: merchandise marker, router, and photocopy machine operator. *Id.* Thus, ALJ Stam concluded that Greene was not disabled prior to October 15, 2013. *Id.* at 31–32.

2

After unsuccessfully seeking review by the Appeals Council, Greene commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on June 8, 2015. D.E. 1.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650, 653 & n.1 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the

3

Case 5:15-cv-00243-FL   Document 44   Filed 07/20/16   Page 3 of 9

claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

On July 30, 2011, Greene fainted while driving and crashed his vehicle (D.E. 40 at 139–40), causing injuries to his right foot and left shoulder (D.E. 41 at 31–32, 48). On August 1, 2011, a healthcare provider at Raleigh Foot Center treated Greene for right foot pain and diagnosed him with a nondisplaced Jones fracture in his right foot. D.E. 41 at 31–32. The provider recommended that Greene use a pneumatic cam walker for approximately four weeks. *Id.* at 32. Greene returned to the Raleigh Foot Center later that month, complaining that his foot was still very painful. *Id.* at 33. He admitted to wearing the pneumatic cam walker for only a week, and the provider opined that Greene's pain was probably due to delayed union of the bones and "almost complete" nonadherence to medical advice. *Id.* The provider again recommended wearing the pneumatic cam walker and warned Greene that noncompliance could create a need for surgical intervention. *Id.*

On August 8, 2011, Greene was evaluated by Dr. James Post at Raleigh Hand Center for pain in his left arm and elbow. *Id.* at 47. Dr. Post's examination revealed that Greene had full range of motion in his left shoulder but marked "positive impingement sign and pain with isolated supraspinatus strength." *Id.* X-rays showed no acute injuries and Dr. Post recommended physical therapy and heat treatment. *Id.* Later that month, Greene returned for a re-evaluation,

complaining of significant lateral shoulder pain. *Id.* at 48. Dr. Post ordered a MRI of Greene's left shoulder, which revealed a subscapularis tear and medial subluxation of the biceps tendon and an anterior portion of his supraspinatus tear. *Id.* Dr. Post recommended surgical repair, prescribed pain medication, and scheduled Greene for surgery. *Id.* However, Greene never went through with the surgery. *Id.* at 49.

In 2012, Greene sought treatment from the Durham VA for his left shoulder pain and right foot pain. A MRI of his left shoulder, dated June 18, 2012, revealed a full thickness tear of the subscapularis tendon with retraction of the tendon to the medial humeral head and marked fatty atrophy of the subscapularis muscle, medial biceps tendon dislocation with marked bicipital tendinopathy/partial tearing, partial thickness tear of the supraspinatus, shoulder joint effusion with synovitis, and moderate acromioclavicular and mild glenohumeral osteoarthritis. *Id.* at 179–81. Physicians treated Greene's shoulder pain with pain medication and a cortisone injection and scheduled him for surgery. D.E. 41 at 145; D.E. 43 at 22. Again, Greene did not go through with the surgery. D.E. 43 at 29. Physicians also diagnosed Greene's right foot with a probable old fracture off the anterior process of the calcaneus, degenerative changes in the talonavicular and first MTP joints, and erosion along the base of the fifth metatarsal. D.E. 42 at 32.

In addition to treating his left shoulder and right foot injuries, the Durham VA treated Greene for opioid and alcohol abuse through Suboxone therapy, group counseling, and individual counseling. *See, e.g.*, D.E. 41 at 186–87. Greene also suffers from depression, anxiety disorder, affective disorder, and hypertension. D.E. 39 at 23.

### D. Residual Functional Capacity Determination

Greene argues that ALJ Stam erred by failing to make specific reference to evidence supporting her conclusions that Greene was capable of (1) maintaining attention and holding

5

concentration for two hours on a regular and continuous basis; (2) standing and walking six hours a day on a regular and continuous basis; and (3) frequent upper-extremity handling on his left side. D.E. 35 at 6–9. Greene also argues that ALJ Stam failed to properly evaluate psychiatric opinion evidence and failed to conduct a function-by-function analysis of his ability to push, pull, finger, or respond appropriately to work pressures. *Id.* at 5–6. Colvin contends that substantial evidence supports ALJ Stam's decision and her decision should be affirmed. D.E. 38 at 4. After review, the court determines that ALJ Stam's RFC analysis precludes meaningful review and should be remanded for further consideration.

If the claimant's impairment does not meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, App. 1, then the ALJ must calculate the claimant's RFC to determine whether he can perform his past work despite his impairments. The claimant's RFC is comprised of his impairments and any related symptoms that affect his abilities in a work setting. 20 C.F.R. § 404.1545(a)(1). When assessing the RFC, the ALJ considers physical abilities; mental abilities; other abilities affected by impairments, such as "impairment(s) which impose environmental restrictions;" and the total limiting effects of the impairments and any related symptoms. *Id.* § 404.1545(b)–(d). The ALJ considers all impairments, even those that are not severe, "and reviews 'all of the relevant medical and other evidence.'" *Bryant v. Colvin*, 571 F. App'x 186, 190 (4th Cir. 2014) (quoting 20 C.F.R. § 404.1545(a)).

The ALJ must provide "findings and determinations sufficiently articulated to permit meaningful judicial review." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also Wyatt v. Bowen*, 887 F.2d 1082, 1989 WL 117940, at *4 (4th Cir. 1989). The ALJ's RFC determination "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g.

6

daily activities, observations)." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Social Security Ruling 96-8p). Furthermore, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Fourth Circuit precedent "makes it clear that it is not [the court's] role to speculate as to how the ALJ applied the law to [her] findings or to hypothesize the ALJ's justifications that would perhaps find support in the record. *Fox v. Colvin*, __ F. App'x __, 2015 WL 9204287, at *5 (4th Cir. Dec. 17, 2015).

Recently, the Fourth Circuit Court of Appeals held that an ALJ's opinion "lack[ed] the specific analysis that would allow for meaningful review," in part because the ALJ gave conclusory explanations for the weight assigned to medical opinion evidence. *Monroe v. Colvin*, __ F.3d __, 2016 WL 3349355, at *11–12 (4th Cir. 2016). In *Monroe*, the ALJ assigned medical opinion evidence differing weights because the opinions were either consistent or inconsistent with "the objective record," "the claimant's treatment history," the "other opinions of record," or the assigned RFC. *Id.* at *11. The Fourth Circuit Court of Appeals, explaining that the ALJ did not specify the evidence to which he was referring, determined that the ALJ failed to "'include a narrative discussion describing how the evidence supports each conclusion.'" *Id.* (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). Accordingly, the court held that "[w]ithout more specific explanation of the ALJ's reasons for the differing weights he assigned various medical opinions, neither we nor the district court can undertake meaningful substantial-evidence review." *Id.*

ALJ Stam's opinion suffers from the same deficit because she failed to specifically explain her reasons for assigning weight to three pieces of medical opinion evidence. She

7

Case 5:15-cv-00243-FL   Document 44   Filed 07/20/16   Page 7 of 9

assigned a physical consultative examination "some weight," but failed to provide a reason for doing so. D.E. 39 at 29. Similarly, she assigned the opinions of non-examining state agency consultants "considerable weight" because their opinions were "consistent with the evidence as a whole," but failed to specify the evidence to which she was referring. *Id.* These inadequacies "frustrate[] meaningful review" and warrant remand. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015); *see also Monroe*, 2016 WL 3349355, at *11–12.

## III.   Conclusion

For the forgoing reasons, the court recommends that Greene's Motion for Judgment on the Pleadings (D.E. 34) be granted, that Colvin's Motion for Judgment on the Pleadings (D.E. 37) be denied, and that the Commissioner's final decision be remanded.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall have until 14 days after service of the Memorandum and Recommendation on plainitff to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described**

**above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: July 20, 2016

*Robert T Numbers II*

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE